IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **JOHNNY LOPEZ**, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 05-19-GMS |
| | : | |
| **THOMAS L. CARROLL**, | : | |
| Warden, | : | |
| | : | |
| Respondent. | : | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondent states the following in response to the petition for a writ of habeas corpus:

In November 2003, the petitioner, Johnny Lopez, was convicted by a Delaware Superior Court jury of trafficking in cocaine (5-50 grams) (Del. Code Ann. tit. 16, § 4753A(a)(2)a), possession with intent to deliver cocaine (Del. Code Ann. tit. 16, § 4751), maintaining a dwelling for keeping controlled substances (Del. Code Ann. tit. 16, § 4755(a)(5)), and possession of drug paraphernalia (Del. Code Ann. tit. 16, § 4771). Lopez was immediately sentenced to a total of eighteen years of incarceration, followed by probation. *See Lopez v. State*, 861 A.2d 1245, 1246 (Del. 2004). The Delaware Supreme Court affirmed Lopez's convictions and sentences on direct appeal. *Id*. at 1251.

Facts

As detailed by the Delaware Supreme Court, *Lopez*, 861 A.2d at 1247-48, the facts leading to Lopez's arrest and conviction are as follows:

> At approximately 10:38 p.m. on March 6, 2003, four police officers went to probationer Lopez' residence at 114 DuPont Street, Wilmington, Delaware to conduct a curfew check and execute an administrative search

warrant. [footnote omitted] The officers were Brian Witte and Anthony Easterling from the Wilmington Police Department and William DuPont and Richard Negley from Operation Safe Streets. Witte and DuPont were wearing clothing that identified them as a police officer and a probation officer, respectively. The administrative search warrant had been approved by DuPont's supervisor on the basis of Lopez' recent positive urine test as well as an anonymous tip that Lopez, who was on probation in connection with another drug charge, was involved in drug dealing.

After arriving at Lopez' residence, Witte, DuPont and Negley went to the front door and knocked. Easterling was stationed outside. A woman, later identified as Melody Ross, answered the door and called for Lopez to come downstairs. As Lopez descended the staircase and made eye contact with the officers, he turned and quickly ran back up the steps to his bedroom. Witte ordered Lopez to stop.

After Ross secured a large dog that was loose in the house, the officers followed Lopez up the stairs. Witte observed a white object falling to the ground through a window next to the stairs and then heard the sound of it breaking into pieces. Easterling, who was stationed outside the house, radioed the officers inside that he had seen Lopez throwing an object out a back window. As Witte and Negley kicked in the locked door to Lopez' bedroom, they observed Lopez walking away from an open rear window. Negley ordered Lopez to get down on the floor, but Lopez continued to walk toward Negley. Witte subdued Lopez and placed him under arrest. A pat-down search incident to Lopez' arrest revealed that Lopez had $807.00 cash in his pocket.

Once outside, Witte located pieces of a broken white plate and a clear plastic bag containing a chunky, tan substance on the ground near the house. He also recovered a bag containing a powdery, white substance on an outside windowsill on the ground floor. The material inside the bags later tested positive for cocaine. The forensic chemist from the Office of the Medical Examiner testified at trial that the plastic bag found on the ground outside the house contained 17.25 grams of cocaine. The bag found on the windowsill contained 0.91 grams of cocaine.

Lopez testified in his own behalf at trial. He denied having any cocaine in his possession on the evening of March 6, 2003. He stated that he was upstairs sleeping when the officers entered his bedroom with guns drawn. He denied running back up the stairs after seeing the officers at the front door. He testified that he had only $7.00 in his pocket at the time of the pat down search and that the remaining $800.00 found by the officers was in his closet.

Discussion

In his petition for federal habeas relief, Lopez raises two grounds for relief: (1) the search of his residence and seizure of the cocaine were conducted in violation of the Fourth and Fourteenth Amendments; and (2) Lopez was not present during the jury selection for his trial. D.I. 1 at 5. Lopez's claims, however, are unavailing.

*Claim 1 – Illegal search and seizure*

In his first claim, Lopez challenges the search and seizure of evidence by probation officers and police of the house in which he was residing. In order to exhaust state remedies, Lopez must have presented to the state courts the legal and factual basis of the claims which he presents to the federal habeas court. *See* 28 U.S.C. § 2254(b); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Landano v. Rafferty*, 897 F.2d 661, 670-71 (3d Cir.), *cert. denied*, 498 U.S. 811 (1990); *Gibson v. Scheidemantel*, 805 F.2d 135, 139 (3d Cir. 1986). Because Lopez presented this claim to the state supreme court on direct appeal, he has exhausted state remedies. *See Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984). Review of Lopez's claim, however, is precluded by *Stone v. Powell*, 428 U.S. 465 (1976). "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground the evidence in an unconstitutional search or seizure was introduced at trial." *Stone*, 428 U.S. at 494; *see also Deputy v. Taylor*, 19 F.3d 1485, 1491 (3d Cir. 1994); *accord Reed v. Farley*, 512 U.S. 339, 347 (1994); *Withrow v. Williams*, 507 U.S. 680, 686 (1993).

Here, the state courts provided Lopez an adequate forum in which to present his Fourth Amendment claim. *See* DEL. SUPER. CT. CRIM. R. 41 (providing that a defendant may file a pretrial motion to suppress evidence). Lopez filed two pretrial suppression motions, arguing that

there was no probable cause for the search leading to the seizure of the drug evidence used against him at trial. Following a June 2003 evidentiary hearing, the trial court denied Lopez's first motion to suppress, finding that there was no search as to the drugs found outside the house because those drugs had been abandoned. *See Lopez*, 861 A.2d at 1248. After another hearing in November 2003, the trial court denied Lopez's second motion to suppress, rejecting the challenge on both legal and factual grounds. *Id.* Lopez raised the issue again on direct appeal to the state supreme court where the court upheld both the lower court's rulings regarding the search of the residence, as well as the lower court's determination that there was probable cause to arrest Lopez. *Id*. at 1249. There is nothing in the record to suggest that the State limited Lopez's opportunity for full and fair litigation of any Fourth Amendment claims in the state courts. *See Word v. Carroll*, 2004 WL 1941342, *3 (D. Del. Aug. 31, 2004). Accordingly, under *Stone v. Powell*, Lopez's claim manifestly fails to provide a basis for federal habeas relief. *See Marshall v. Hendricks*, 307 F.3d 36, 81-82 (3d Cir. 2002); *Word*, 2004 WL 1941342 at *3.

*Claim 2 – Defendant's absence from jury selection*

In his second claim, Lopez asserts, without record support, that he was not present during jury selection for his trial.[1] Before a federal court can consider a habeas petitioner's claim, the petitioner must first exhaust any available state court remedies. 28 U.S.C. § 2254(b)(1); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). To satisfy the exhaustion requirement, the petitioner must "fairly present" his federal claims to the highest state court before bringing them in federal court. *See Duncan v. Henry*, 513 U.S. 364, 366 (1995); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002). To "fairly present" a federal claim to a state court, a petitioner must have presented the claim's factual and legal

---

[1] Although Lopez includes the grand jury selection as an issue in this claim, clearly he had no right to be present during selection of a grand jury.

substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). "[I]t is not sufficient that all the facts necessary to support the federal claim were before the state courts." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Lopez did not fairly present his claim that he was not present during jury selection to the state supreme court, and thus has failed to exhaust the claim. *See* 28 U.S.C. § 2254(b). The only reference to this claim in state court was in Lopez's *pro se* handwritten opening brief on direct appeal in which he wrote, "I was never brought back to court to be about to [*sic*] handpick my jury. . . ." Op. Br. in Del. Supr. Ct. No. 599, 2003, at 4. Respondent has discovered no other reference to the issue in Lopez's state court filings. The claim, moreover, was not addressed either in the state's answering brief or by the state supreme court in its opinion affirming Lopez's conviction. *See Lopez*, 861 A.2d at 1246; State's Ans. Br. in Del. Supr. Ct. No. 599, 2003; *Brown v. Cuyler*, 669 F.2d 155, 159 (3d Cir. 1982) (prosecutor's reading of petitioner's state court brief is highly probative on question of presentation of issue). The state courts are not required to search out possible claims lurking in prisoners' state court filings in order to address them. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Lopez manifestly failed to present his claim to the state courts and thus the claim is unexhausted.

If, however, there is no available state remedy, then Lopez is excused from the exhaustion requirement with respect to that claim. *See Teague v. Lane*, 489 U.S. 288, 298 (1989); *Castille v. Peoples*, 489 U.S. 346, 351-52 (1989). Because Lopez did not raise this claim on direct appeal from his conviction, he would now be procedurally barred from raising the claim in a state postconviction motion under Delaware Superior Court Criminal Rule 61(i)(3) unless he demonstrated cause for his procedural default and resulting prejudice. As a result,

Lopez is excused from satisfying the exhaustion requirement on his claim that he should have been present at jury selection. *See Lawrie v. Snyder*, 9 F. Supp.2d 428, 454 (D. Del. 1998).

Nevertheless, federal habeas review of the claim is barred unless Lopez establishes cause for his procedural default in the state courts and actual prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir.) *cert. denied*, 504 U.S. 944 (1992); *Dawson v. Snyder*, 988 F. Supp. 783, 802-03 (D. Del. 1997); *Johnson v. Ellingsworth*, 783 F. Supp. 215, 218-21 (D. Del. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense" precluded his compliance with state procedural rules. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Murray v. Carrier*, 477 U.S. 478, 487 (1986); *Dawson*, 988 F. Supp. at 805. To establish prejudice under the cause and prejudice standard, a petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Carrier*, 477 U.S. at 493-94 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *Dawson*, 988 F. Supp. at 804-05. Lopez has failed to allege cause for his procedural default and thus the claim should be summarily dismissed.

Regardless, Lopez cannot establish prejudice. Lopez asserts that he was not present for jury selection. The record reveals that prior to the start of jury selection, the trial judge, after being informed by the prosecutor that Lopez had a history of disruptive behavior, warned Lopez that she would not tolerate any outbursts in the courtroom. Transcript of Jury Selection, Nov. 20, 2003 ("Tr.") at 6. Nevertheless, Lopez began trying to argue issues previously decided, refused to sit down when directed to do so, interrupted the judge, and continued to talk after being told to be quiet. *See* Tr. at 7-13. Finally, after repeatedly warning him about his behavior, the judge

6

ordered Lopez to be removed from the courtroom. Tr. at 13. Even after then receiving yet another chance to remain in the courtroom, Lopez still could not control himself and he was removed. Tr. at 14. Lopez's counsel was permitted to discuss the situation with his client, after which defense counsel reported, "It doesn't appear that he wants to be in here." Tr. at 19. That statement was confirmed by a correctional officer. Tr. at 19. After this discussion, the jury panel was brought in and Lopez was brought back to the courtroom. Tr. at 21. When the first prospective juror approached the bench for individual voir dire, Lopez again stood up and refused to be seated. Tr. at 25. Lopez was removed from the courtroom. Tr. at 25. The United States Supreme Court has held that following disruptive behavior and after being warned by a judge, a defendant may be excluded from the courtroom to allow the trial to proceed. *See Illinois v. Allen*, 397 U.S. 337, 349 (1970) ("[T]here can be no doubt that [the defendant], by persisting in his reprehensible conduct, surrendered his right to be present at the trial."). *See also Fischetti v. Johnson*, 384 F.3d 140, 150 (3d Cir. 2004) ("defiant behavior by a defendant can properly cost the defendant some of his Sixth Amendment protections if necessary to permit trial to go forward in an orderly fashion."). Thus, because the trial judge could properly order Lopez's removal from the courtroom after warning him about the consequences of his disruptive behavior, Lopez cannot establish prejudice and this claim should be summarily dismissed.

## Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of the following proceedings have been prepared: preliminary hearing (Mar. 17, 2003); evidentiary hearing (June 26, 2003); violation of probation and suppression hearing (June 26-27, 2003); motion to withdraw at call of trial calendar (Sept. 9, 2003); call of the criminal trial calendar (Nov. 11, 2003); suppression hearing (Nov. 18, 2003); call of the criminal trial calendar (Nov. 20, 2003);

7

jury selection (Nov. 20, 2003); trial proceedings (Nov. 20-21, 2003). In the event that the Court directs the production of any transcript, respondent cannot state with specificity when such transcript would be available. However, respondent reasonably anticipates that such production would take 90 days from the issuance of any such order by the Court.

    For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

                                                                                                                                              _____

                                      Elizabeth R. McFarlan
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar ID 3759

Date: August 1, 2005